NO. 07-01-0322-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



SEPTEMBER 19, 2002



______________________________




TEXAS WORKERS' COMPENSATION INSURANCE FUND, APPELLANT



V.



ALISHA BYRD, BENEFICIARY OF MELVIN R. BYRD,


(DECEASED), RICHARD WALTERS AND PACIFIC


EMPLOYERS INSURANCE COMPANY, APPELLEES



_________________________________



FROM THE 212TH DISTRICT COURT OF GALVESTON COUNTY;



NO. 99CV0651; HONORABLE SUSAN CRISS, JUDGE



_______________________________



Before QUINN and REAVIS, JJ, and BOYD, SJ. (1)

 Presenting four issues for our determination, appellant Texas Mutual Insurance
Company brings this appeal from a summary judgment in favor of appellees Alisha Byrd,
beneficiary of Melvin R. Byrd, deceased, Richard Walters, and Pacific Employers
Insurance Company (PEIC). Appellant was formerly known as the Texas Workers'
Compensation Insurance Fund (TWCIF) and for convenience, and as the parties do, we
will refer to it as the Fund. In the suit underlying this appeal, the Fund sought judicial
review of two separate decisions of the Texas Workers' Compensation Commission's
Appeals Panel. 

 The issue in the trial court was whether the workers' compensation policy of Elliott
Machine Shop (Elliott) (insured by the Fund) or the workers' compensation policy of
Entergy/Gulf States (Entergy) (insured by PEIC) covered injury claims of Richard Walters
(Walters) and Melvin Byrd (Byrd) based upon which entity was their employer at the time
of the accidents giving rise to their claims. Determination of that issue involved the
"borrowed servant" doctrine. The summary judgment giving rise to this appeal arose from
PEIC's traditional summary judgment motion and, by its judgment, the trial court found
Elliott was the employer of the duo at the relevant times. For reasons we later express,
we affirm the judgment of the trial court.

 The standards by which we review the validity of a summary judgment are by now
so well established as to be axiomatic. A summary judgment for a defendant is only proper
when the defendant negates at least one element of each of the plaintiff's theories of
recovery, Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970), or pleads and
conclusively establishes each element of an affirmative defense, City of Houston v. Clear
Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979). When reviewing a traditional
summary judgment, such as the one here, we take as true all evidence favorable to the
non-movant and indulge every reasonable inference in the non-movant's favor. Nixon v.
Mr. Property Management Co. Inc, 690 S.W.2d 546, 549 (Tex. 1985). 

 Walters and Byrd were employees of Elliott and sustained injuries, which for Byrd 
proved to be fatal. However, the Fund argues that at the time of the injuries, Entergy was
responsible for those injuries under the "borrowed servant" doctrine. A hearing officer of
the Texas Workers' Compensation Commission determined that the Fund, as Elliott's
compensation carrier, was liable in each instance. Those decisions were appealed to an
Appeals Panel of the Texas Workers' Compensation Commission, which upheld the
decision of the hearing officer in each instance. 

 In arriving at its decision, with regard to the injuries to both Byrd and Walters, the
Appeals Panel affirmed the hearing officer's finding that prior to the dates of those injuries,
Elliott had entered into a service contract with Entergy that provided Elliott would furnish
truck drivers to Entergy, but that Elliott retained the right to direct and control the details
of their work, and the drivers would remain Elliott's employees. In each case, the Appeals
Panel concluded the Fund, as Elliott's insurer, was liable for the worker's compensation
claims. The Fund then filed this suit in Galveston County, challenging both decisions of
the Appeals Panel. 

 As we have noted, in presenting its appeal, the Fund raises four issues for our
determination. In its first issue, the Fund queries whether the trial court erred in dismissing
the Fund's case against Walters. The genesis of this question is that PEIC had filed a
plea to the jurisdiction of the Galveston County trial court in which it asserted any suit
involving Walters's compensation claims, by law, was required to be filed in Jefferson
County, the county of Walters's residence, and if that plea was well taken and the trial
court overruled it in its summary judgment, reversible error exists. In its second issue, the
Fund asks if the trial judge erred in dismissing its action involving Melvin and Alisha Byrd. 
Its rationale for raising this issue is that even if PEIC had correctly contended the trial court
lacked jurisdiction over Walters's claims, PEIC made no such claim with regard to the
Byrds and the court would have reversibly erred in finding it had no jurisdiction over that
portion of the dispute. Thus, if that was a basis for the court's summary judgment, it
reversibly erred.

 In its third issue, the Fund inquires if the trial court erred in rendering its summary
judgment affirming the Commission's decision and dismissing all of the Fund's claims. In
supporting their claim that the trial court erred in doing so, the Fund reasons that, in
relevant part, PEIC sought its judgment on the basis that a contract between TWCIF (i.e.
the Fund) specifically provided that both Walters and Byrd would remain the employees
of the Fund's policyholder and would retain control of them. However, it continues, PEIC
actually failed to produce proof of any such contract, and a judgment on that basis could
not be sustained. In its fourth issue, the Fund questions that the evidence conclusively
negated the Fund's borrowed servant claim because PEIC's own proof established that its
policyholder furnished the major equipment used by the workers, gave work instructions
directly to the workers, and "asserted the right to prevent the workers themselves (as
opposed to preventing the Fund's policyholder) from discharging their work duties." 

 Because the Fund's first two issues are so closely related, we will consider them
together. In addition to answering the Fund's petition, as noted, PEIC filed a plea to the
jurisdiction of the trial court over Walters's claims, together with a motion to transfer venue
to Jefferson County, which was Walters's residence insofar as those claims were
concerned. Although PEIC sought summary judgment on two bases, i.e., that Walters's
portion of the suit was filed in the wrong county, and there was no issue of material fact
that Elliott, not Entergy, was the employer of Walters and Byrd at the time of their injuries, 
the record reveals that on May 30, 2001, the trial court granted two separate and distinct
judgments. In one, the trial court expressly overruled PEIC's plea to the jurisdiction and
the motion to transfer the cause. In the other, it granted PEIC's motion for summary
judgment. In that state of the record, then, the trial court simply did not grant PEIC's
jurisdictional challenge. Thus, because the jurisdictional challenge was specifically,
explicitly, and separately overruled, the summary judgment must have been granted on the
remaining prong of its motion, namely, that the evidence was sufficient to show that the
employees were not borrowed servants of Entergy, but remained employees of Elliott at
the time of their injuries. Appellant's first two issues are overruled.

 As we have noted, in its third issue, the Fund argues that in its summary judgment
motion, PEIC stressed that "a contract between TWCIF and Pacific specifically states that
these employees [i.e., Walters and Byrd] will remain employees of Elliott," and the
"contract [between TWCIF and Pacific] specifically states that control will remain with
Elliott." However, it argues, no such contract between those parties was ever received into
evidence, and because there was no such contract admitted, the trial court erred in its
judgment. From an examination of the motion over its 11-page length, it is apparent that
this initial reference was inadvertent and the numerous other references show the alleged
contract was between Elliott, the Fund's insured, and Entergy, PEIC's insured. Moreover,
this particular challenge was not raised at the trial level. As this court held in Rayl v.
Borger Economic Develop. Corp., 963 S.W.2d 109, 113 (Tex.App.--Amarillo 1998, no pet.),
issues not expressly presented to the trial court by written motion, answer, or other
response may not be considered on appeal as grounds for reversal of a summary
judgment. That being true, the question may not now be raised for the first time on appeal.

 The Fund next argues that PEIC "inexplicably" attached to its motion as an exhibit
an "incomplete and unexecuted contract" between Elliott and Gulf States Utilities
Company. It asserts that although the contract was incomplete and unexecuted, PEIC
never offered any affidavit or other evidence that the contract had ever actually been
executed by the parties or that Gulf States Utilities Company was the same entity as
Entergy. However, none of these objections were made before the trial court, nor were
they raised in the Fund's response to the motion. Appellant's response to the motion was
based upon the theory that "Byrd and Walters were statutory employees of Entergy
because their work was governed by federal statutes and regulations which deem them
to be employees of Entergy as a matter of law." Indeed, in the closing portion of its
response, the Fund argued that although "the existence of a contract is a factor to be
considered in determining who is the employer, . . . it is not controlling." It also reasoned
in its response, that if the evidence "shows that the right of control is different than that in
the contract, the issue becomes one for the fact finder to resolve [citation omitted]." Here,
the Fund asserts, "the summary judgment evidence clearly reflects that Entergy had the
right of control despite the terms of the contract." Moreover, in its conclusion to the
response, it opines that the parties could not "frustrate the federal regulations by
agreement and those federal regulations become a part of any contract between Entergy
and Elliott." Again, the Fund's appellate contentions with regard to the sufficiency of proof
of identity of the parties to the contract, or the lack of completeness of the contract exhibit,
were not raised at the trial level. Because of its failure to raise those questions before the
trial court, the Fund may not now raise them for the first time. Id. at 113. The Fund's third
issue is overruled.

 Reiterated, in its fourth issue, the Fund questions the sufficiency of PEIC's summary
judgment evidence to conclusively negate that Walters and Byrd were borrowed servants
of Entergy at the time of the accident. Parenthetically, the record shows that in a pretrial
joint motion for continuance, the parties stated that "the primary dispute in this case
involves a question of law." Because of the nature of this challenge, it is necessary to
review PEIC's summary judgment evidence (2) in some detail.

 As relevant here, subsection 18 of section 401.011 of the Texas Labor Code defines
an "employer" as a person who makes a contract of hire, employs one or more employees,
and has workers' compensation insurance. Tex. Lab. Code Ann. § 401.011(18) (Vernon
Supp. 2002). In the trial court, appellant did not argue that Entergy was the employer of
record of Walters and Byrd. Rather, it contended that at the time of their injuries, Walters
and Byrd were "borrowed servants" of Entergy and PEIC, as Entergy's workers'
compensation insurance carrier, was liable for their injuries. In Producers Chemical Co.
v. McKay, 366 S.W.2d 220 (Tex. 1963), the court explained the "borrowed servant"
doctrine as follows:

 Whether general employees of one employer have, in a given situation,
become special or borrowed employees of another employer is often a
difficult question, particularly when employees are furnished with machinery
by their general employer to accomplish part of a project or contract
undertaken by another. Solution of the question rests in right of control of
the manner in which the employees perform the services necessary to
accomplishment of their ultimate obligation. If the general employees of one
employer are placed under control of another employer in the manner of
performing their services, they become his special or borrowed employees. 
If the employees remain under control of their general employer in the
manner of performing their services, they remain employees of the general
employer and he is liable for the consequences of their negligence.


Id. at 225.


 The Fund argues that the contract governing the relations between Elliott and
Entergy contains "contradictory provisions concerning which entity, Entergy or Elliott,
would possess the right of control over work that might be performed in the future by Elliott
for the benefit of Entergy." The provisions to which the Fund refers are:

 SECTION 1. Contractor [Elliott] agrees to do and perform for Company
[Entergy] that work provided in a purchase order issued to Contractor in
connection herewith, said work to be done on the terms and conditions
expressed in such purchase order and in this Agreement . . . .


 SECTION 3. Unless otherwise provided in the purchase order, all materials
to be furnished by Contractor shall be of the finest quality available for the
use intended. All work to be done hereunder is to be performed and
completed in accordance with Company's standards, specifications and the
industry practices pertaining to similar work, and any specific provisions in
said purchase order, or in this Agreement, and shall be subject to inspection
from time to time by Company's representatives. Upon completion, said
work shall be subject to approval and acceptance by such Company's
representatives. However, all such inspection and approval shall be
concerned as to results only and not as to the method or manner of
performing said work.


 SECTION 4. Contractor shall employ and direct all persons performing any
work hereunder, and such persons shall be and remain the sole employees
of, and subject to the control and direction of, Contractor, and shall not be
the employees of, or subject to, the direction and control of Company, it
being the intention of the parties hereto that Contractor shall be and remain
an independent contractor, and nothing herein contained shall be construed
as inconsistent with that status. Contractor is to determine the manner and
method in which the work shall be performed, to conduct the work in the
name of the Contractor, and agrees to inform all persons employed by him/it
and working upon said undertaking that they are employed by and work for
said Contractor and that they are not employed by Company.


 We do not agree that the provisions are inconsistent. Section 1 merely provides
that the work to be done will be in accordance with the provisions of the purchase order
and attachments. It does not deal with the control and direction of the employees
performing the work. Section 3 refers to the work to be done and that it will be subject to
approval and acceptance. Even so, it closes with the express statement that the right of
inspection and approval is related to "results only" and not as to the method or manner that
work is performed.

 Neither of those sections is inconsistent with the rather clear dictates contained in
section 4 that the Contractor (Elliott) would employ and direct all persons performing any
work hereunder, that those persons would be subject to the control and direction of the
Contractor, and would not be the employees of the Company (Entergy) or subject to its
direction and control. In Castillo v. U. S. Fire Ins. Co., 953 S.W.2d 470 (Tex.App.--El Paso
1997, no writ), after referring to the Producers Chemical Co. explication of the borrowed
servant doctrine, the court observed further that when a contract between the employers
expressly provides that one or the other shall have right of control, that provision
determines who is the employer. Id. at 473. 

 However, in Exxon Corp. v. Perez, 842 S.W.2d 629 (Tex. 1992), the court iterated
a qualification upon that rule with the observation that if the contract was a mere sham or
cloak designed to conceal the true legal relationship between the parties, the contract
would not prevent the existence of a master-servant relationship. Id. at 630. Here, in
addition to the contractual provisions, the record shows that in response to Entergy's
request for admissions, the Fund admitted that Walters picked up his paycheck at Elliott, 
filled out an application at Elliott, that Entergy did not supervise Walters on the manner
and details of how he performed his forklift activities, that Walters's paychecks were issued
by Elliott, and that Elliott withheld social security and federal taxes for Walters. It also
admitted that Walters took Byrd's place after Byrd's accident, and Entergy did not provide
paychecks to Walters or Byrd. Additionally, it was admitted that Norris Simon, Elliott's
vice-president, wrote the Fund requesting the payment of Walters's and Byrd's workers'
compensation claims and, in those letters, stated that Walters and Byrd were employees
of Elliott. 

 In asserting that a fact question exists, the Fund points to evidence that Byrd's and
Walters's jobs were the same, that Walters reported to Entergy's premises for work each
day, that Walters received and completed paper work forms from Entergy each day, that
Entergy told Walters where to drive his truck and provided Walters with trucks and forklifts
for his use, and that Entergy reserved the right to prevent Walters and other drivers from
performing work.

 However, Entergy's traffic coordinator Keith Krechel testified that if there was a
particular employee they did not want to work for them, Entergy's right was actually to call
and advise Elliott of that fact. He also admitted that Entergy had no authority to actually
hire or fire truck drivers. The summary judgment evidence was that, although Entergy 
furnished the equipment used by employees such as Walters and Byrd, their training to
use the equipment came from Elliott. With regard to the paperwork, the evidence was that
those were bills of lading or delivery tickets which were given to the driver each morning
with instructions of where to go. The summary judgment evidence also showed that Elliott
was the entity which tested and certified the employees in the manner in which they would
load their deliveries. If there was a dispute about whose instructions to follow, those of
Elliott's would govern.

 Suffice it to say, there was no summary judgment evidence that would show the
contract was a mere sham or cloak to hide the real relationship between the parties. 
Appellant's fourth issue is overruled.

 In final summary, all of the Fund's issues are overruled and the judgment of the trial
court is affirmed. 


 John T. Boyd

 Senior Justice


Do not publish. 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. 
2. The Fund did not submit any evidence with its response.



s/header.htm") fs;
 mso-footnote-continuation-separator:url("07-11-0139-CV%20%20Opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-11-0139-CV%20%20Opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-11-0139-CV%20%20Opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-11-0139-CV%20%20Opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-11-0139-CV

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL C

 

AUGUST 5, 2011

 

______________________________

 

 

HARVEY BRAMLETT, JR. AND 

JASON BLAKENEY, APPELLANTS

 

V.

 

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

INSTITUTIONAL DIVISION, ET AL., APPELLEES

 

 

_________________________________

 

FROM THE 108TH DISTRICT COURT OF POTTER
COUNTY;

 

NO. 99,017-00-E; HONORABLE DOUGLAS WOODBURN, JUDGE

 

_______________________________

 

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

ABATEMENT AND REMAND

            Appellants, Harvey Bramlett, Jr. and Jason Blakeney,
inmates proceeding pro se and in forma pauperis, appeal the trial
court's judgment dismissing their suit against Appellee, the Texas Department
of Criminal Justice Institutional Division, et al., as frivolous and for
failure to comply with chapter 14 of the Texas Civil and Practice Remedies
Code.  The appellate record has been
filed.  On July 25, 2011, Appellants
filed a motion for extension of time in which to file their brief on the ground
that, despite their requests, the trial court has failed to file Findings of
Fact and Conclusions of Law.  An
extension has been granted to October 24, 2011. 
In the interest of judicial economy, we abate this appeal and remand the
cause to the trial court with instructions to make and file Findings of Fact
and Conclusions of Law.[1]

            Rule 296 of the Texas
Rules of Civil Procedure provides that in any case tried in the district court
without a jury, any party may request written findings of fact and conclusions
of law within twenty days after the judgment is signed.  The judgment in the underlying case was
signed on March 14, 2011.  Nine days
later, on March 23, 2011, Appellants filed a "Request for Findings of Fact
and Conclusions of Law."  Rule 297
provides that the trial court shall file its findings and conclusions within
twenty days after a timely request is filed. 
The trial court's findings and conclusions were due on April 12, 2011.  None were filed.  Thereafter, Appellants, pursuant to Rule 297,
filed a "Notice of Past Due Findings of Fact and Conclusions of Law."[2]  The deadline for the trial court to file its
findings and conclusions was extended to forty days from the date the original
request was due, i.e., May 2, 2011.  The
Clerk's Record, filed July 12, 2011, does not contain any findings or
conclusions.

            Upon compliance by a
party with Rules 296 and 297, the trial court is required to make and file
findings of fact and conclusions of law. 
See Cherne Industries, Inc.
v. Magallanes, 763 S.W.2d 768, 772 (Tex. 1989).  The failure of a trial court to respond to
all timely requests is presumed harmful unless the record shows that an
appellant has suffered no injury.  Id.  As
a general rule, an appellant has been harmed if he has to guess at the reason
the trial court ruled against him.  See Larry F. Smith, Inc. v. The Weber Co.,
110 S.W.3d 611, 614 (Tex.App.--Dallas 2003, pet. denied).

We now abate this appeal and remand the cause to the trial
court with instructions to make and file findings of fact and conclusions of
law in support of its judgment.[3]  The trial court is directed to cause its
findings and conclusions to be included in a supplemental clerk's record to be
filed with the Clerk of this Court no later than September 23, 2011.  Appellants' brief is due no later than
October 24, 2011.

It is so ordered.

                                                                        Per
Curiam

 

 

 

 

 

                                                                                    

 

 











[1]As
long as the same judge presides in the trial court, abatement is the preferred
remedy.  See Larry F. Smith, Inc. v. The Weber Co., 110 S.W.3d 611, 616
(Tex.App.--Dallas 2003, pet. denied).  Another option is reversal and remand.  See id.

 





[2]Rule
297 provides that a notice of past due findings be filed within thirty days
after the original request.  In this
case, that deadline was April 22, 2011. 
Although Appellants' past due notice bears a file stamp date of April
27, 2011, the Certificate of Service reflects the date of April 21, 2011.  Pursuant to Warner v. Glass, 135 S.W.3d 681, 685-86 (Tex. 2004), inmate mail is
deemed timely filed when it is delivered to prison authorities for
mailing.  We will assume Appellants delivered
the past due notice for mailing on April 21, 2011.   





[3]This
Court's resolution allows us to moot the mandamus proceeding pending in cause
number 07-11-0300-CV, in which Appellants seek mandamus relief asking this
Court to compel the Honorable Douglas Woodburn to make and file findings and
conclusions.